IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GUNNAR JAMES EBERT,<br><br>Defendant. | Case No. 1:24-cr-185<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Mac Schneider, United States Attorney for the District of North Dakota, and Jacob T. Rodenbiker, Assistant United States Attorney; Defendant, GUNNAR JAMES EBERT; and Defendant's counsel, Katryna Lyn Spearman, agree to the following:

1. Defendant acknowledges the Indictment charges a violation of Title 18, United States Code, Sections 922(g)(3), 924(a)(8), and 2.

2. Defendant has read the charge and Defendant's attorney has fully explained the charge to Defendant.

3. Defendant fully understands the nature and elements of the charged crime.

4. Defendant will voluntarily plead guilty to the Indictment and admit the forfeiture allegation.

5. The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Rule 11(c) of the Federal Rules of Criminal Procedure. The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes

the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6. Defendant will plead guilty because Defendant is in fact guilty of the charge. In pleading guilty to the Indictment, Defendant acknowledges a sufficient factual basis exists to satisfy the essential elements, including:

> As set forth more fully in the affidavit filed with the complaint in this case, on June 24, 2023, FBI received a tip from a partner agency that Telegram user "Goober Waffen" wrote several posts supporting mass shooters in the Telegram channel, "NacionalistWorld." On June 23, 2023, Goober Waffen posted a picture of a man in uniform with the caption, "If I ever do something out of pocket, I need you boys to make sure this is one of the pictures the[y] sent to the news media." The Department of Defense (DoD) matched the Telegram photo to Gunnar James EBERT. The DoD also provided a photo of EBERT. In a post from June 7, 2023, Goober Waffen wrote, "If it's any consolation; the name and pictures associated with my account are my real name and face lol." Upon receiving the tip, federal agents reviewed several hundred Telegram posts written by EBERT from June to August 2023. On June 17, 2023, EBERT described his arsenal of firearms, writing, "I got an DPMS Panther Arms 20" Bull Barrel; it fucks … but the AR is my fav. I got a 243 Winchester and a .22lr, a couple shotguns and a variety of handguns, and one Hi Point .45 Carbine that I love." EBERT added, "I have a 3D printer too, once I configure it right I wanna start trying to print guns too." EBERT also discussed "writing up my rifle like the saints." On August 5, 2023, EBERT posted a picture of an assault rifle with the caption, "Ole girl." Another Telegram user responded, sharing a photo of a black rifle with white writing on it and comparing it to that of EBERT's. EBERT responded that he does not know what he would write on his.
>
> On July 13, 2024, federal agents interviewed EBERT about his Telegram posts. EBERT provided the following information as it relates to this offense. EBERT stated he had previously experimented with other drugs, but marijuana is what he did daily during the time he was suspended from the Army. Federal agents received a copy of medical records from September 2021, which indicate EBERT

2

told a practitioner that he uses marijuana most days to "self-medicate." Federal agents received bank transaction history for EBERT's primary checking account from January 1, 2022, to April 22, 2024, which revealed several purchases made by EBERT at marijuana dispensaries in Montana. On October 1, 2024, federal agents were notified by EBERT's U.S. Army command that EBERT failed his September 15, 2024 urinalysis test. EBERT's test results came back positive for THC, the psychoactive component found in marijuana.

Federal agents executed a search warrant on October 8, 2024, at EBERT's residence in Dickinson, agents found and seized these 10 firearms: Hi-Point, Model C9, 9mm pistol; DPMS, Model A-15, .223 caliber rifle; Hi-Point, Model 4595, .45 caliber rifle; Marlin, Model 25M, .22 caliber rifle; Glock, Model 22, .40 caliber pistol; Howa, Model 1500, .243 caliber rifle; Remington, Model 870 Wingmaster, 12-ga. shotgun; Bearman, Model BBG 38, .38 caliber pistol; Mossberg, Model 505, 20-ga. shotgun; and SIG Sauer, Model P226, 9mm pistol. At the residence, agents also found 30 rounds of Speer 9mm ammo; 2 rounds of SIG Sauer .38 caliber ammo; 15 rounds of JSC Barnaul .40 caliber ammo; 7 rounds of Armscor .22 caliber ammo. Agents searched two vehicles too. In EBERT's RAV4, agents found 41 rounds of 9mm ammo. In EBERT's Silverado, agents found 120 rounds of .22 caliber ammo; 43 rounds of .38 caliber ammo; and 1 round of 9mm ammo. On October 8, EBERT admitted that he had regularly used marijuana, and his last use of marijuana was approximately two weeks prior to his military drill on or about September 15.

An ATF agent determined that the firearms and ammunition met the definitions under 18 U.S.C. § 921 and that they were manufactured outside of North Dakota, thus affecting commerce.

7.   Defendant understands the following maximum penalties apply:

| | |
|---|---|
| Imprisonment: | 15 years |
| Fine: | $250,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

3

8. Defendant understands that by pleading guilty Defendant surrenders rights, including:

    (a) The right to a speedy public jury trial and related rights as follow:

        (i) A jury would be composed of 12 lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

        (ii) At a trial, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

        (iii) At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify but cannot be required to testify.

(b)    Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9.    Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10.    The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States Sentencing Commission's Guidelines Manual, (Nov. 2024) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation of sentence. The United States expressly reserves the right to appeal from an unreasonable sentence.

11.    This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any tribal, state, or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12.    Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13. The parties agree the base offense level for Defendant's conduct is 14, because Defendant was a prohibited person. (USSG § 2K2.1(a)(4)(A)). The parties further agree a 4-level upward adjustment applies, because Defendant possessed 8–24 firearms. (USSG § 2K2.1(b)(1)(B)).

14. At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a 2-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may apply other adjustments the

parties have not agreed upon. The Court may also depart from the applicable Guideline range. See USSG § 1B1.1, comment. (n.1(F)). The Court may also vary or impose a sentence outside the Guideline framework. See USSG § 1B1.1, comment. (backg'd.). The parties reserve the right to object to any adjustment, departure, or variance not otherwise agreed upon, forfeited, or waived in this plea agreement.

17. At sentencing, the United States will recommend a prison sentence within the applicable guidelines range and request the Court order forfeiture.

18. Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

19. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

20. **Defendant's Waiver of Appeal**. Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

21. By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty under Rule 11(d) of the Federal Rules of Criminal Procedure once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

22. The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. They acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report through a conference or other informal procedures.

23. Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of the guilty plea.

24. Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

//

//

//

AGREED:

Dated: _____

JENNIFER KLEMETSRUD PUHL
~~MAC SCHNEIDER~~
Acting United States Attorney

*JSTRhLL* (Digitally signed by JACOB RODENBIKER Date: 2025.03.17 12:49:08 -05'00')

By: JACOB T. RODENBIKER
Assistant United States Attorney

Dated: 03-08-25

GUNNAR JAMES EBERT
Defendant

Dated: March 17, 2025

KATRYNA LYN SPEARMAN
Attorney for Defendant

10